## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JESSICA QUINONES, *et al.*, | ) | Case No. 1:23-cv-2437 |
| | ) | |
| Plaintiffs, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Jennifer Dowdell Armstrong |
| EDGEWATER YACHT CLUB, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>OPINION AND ORDER</u>

Plaintiffs Jessica Quinones, Allen Mentz, and Shannon Mesko filed suit against Edgewater Yacht Club, Inc.  Ms. Quinones and Ms. Mesko claim a hostile work environment in violation of federal and State laws prohibiting sex discrimination, and all three Plaintiffs allege retaliation.  Defendant moves for separate trials and to exclude the testimony of non-party witness Angelina Medina.  (ECF No. 14.)  For the reasons that follow, the Court **DENIES** both motions.

### STATEMENT OF FACTS

At this stage of the proceedings, the record shows the following facts relevant to disposition of the motion.

### A.    Jessica Quinones

Jessica Quinones worked at Edgewater Yacht Club.  (ECF No. 1, ¶ 13, PageID #3.)  Beginning in April 2022 until the end of her employment in June 2022, Ms. Quinones alleges that she experienced sexual harassment from coworker Lean "Karlo" Almeda.  (*Id.*, ¶ 14, PageID #3.)  Ms. Quinones describes both verbal and

physical sexual harassment from Almeda, including unwanted touching, sexual remarks about her body, and comments to her about his genitals.  (*Id.*, ¶¶ 16–18, PageID #4.)  In addition, Ms. Quinones alleges that she observed Mr. Almeda's physical advances toward and inappropriate comments about coworkers.  (*Id.*, ¶¶ 16, 18–20, PageID #3–4.)  She claims that she saw another coworker, Tony Rancifer, make sexually inappropriate comments about Shannon Mesko.  (*Id.*, ¶ 29, PageID #6.)

During the period of alleged harassment between April and June 2022, Ms. Quinones verbally complained to management regarding Almeda's conduct.  (*Id.*, ¶ 21, PageID #4.)  Ms. Quinones complained to kitchen manager Abner Cortes, head chef Ray Rodriguez, general manager Michael O'Malley, and general manager Ron Wolfe, and she met with board chairman Duane Wolff.  (*Id.*, ¶¶ 21–24, 26, PageID #4–5.)  Because of the continued alleged sexual harassment and her suspicion that management was shorting her wages, Ms. Quinones quit on June 16, 2022 and argues that she was constructively terminated.  (*Id.*, ¶ 28, PageID #6; ECF No. 16, PageID #571.)

### B.  Allen Mentz

Allen Mentz is Ms. Quinones' son.  (*Id.*, ¶ 30, PageID #6.)  Then sixteen years old, Mr. Mentz started working at Edgewater Yacht Club in May 2022, but was terminated on June 18, 2022, two days after Ms. Quinones left.  (*Id.*)  Mr. Mentz had not had any disciplinary issues during his employment.  (*Id.*)  On the day he was terminated, Ms. Quinones called O'Malley and asked why Edgewater Yacht Club fired her son.  (*Id.*, ¶ 31, PageID #6.)  Mr. O'Malley answered that Mr. Mentz was an

2

at-will employee.  (*Id*.)  Mr. Mentz alleges that he was terminated in retaliation for Ms. Quinones' complaints of sexual harassment.  (*Id*.)

### C.    Shannon Mesko

Shannon Mesko worked at Edgewater Yacht Club from approximately June 2021 to May 2022—overlapping with Ms. Quinones' employment in April and May 2022.  (*Id*., ¶ 33, PageID #7.)  Ms. Mesko alleges that she experienced sexual harassment by Almeda.  (*Id*., ¶ 34, PageID #7.)  She describes both verbal and physical sexual harassment from Almeda, including unwanted touching, sexual remarks about her body, and comments about his genitals.  (*Id*., ¶ 34–35, PageID #7.) Ms. Mesko also alleges that she experienced sexual harassment from Rancifer.  (*Id*., ¶¶ 43–45, PageID #9.)  She describes both verbal and physical sexual harassment from Rancifer, including unwanted physical touching, following her around the workplace, and asking her out multiple times despite Ms. Mesko's rejections.  (*Id*.) She alleges that she experienced verbal sexual harassment from O'Malley, including an advance to see her after work.  (*Id*., ¶ 40, PageID #8.)  In addition, Ms. Mesko alleges that she observed Almeda make sexually inappropriate comments and advances toward other coworkers, including minors.  (*Id*., ¶ 36, PageID #7; ECF No. 16, PageID #567–68.)  Although she did not witness Almeda's alleged harassment of Ms. Quinones, Ms. Quinones told Ms. Mesko about it when it happened.  (*Id*., ¶ 38, PageID #8.)  Ms. Mesko also alleges that she observed Almeda, Rodriguez, and O'Malley make sexual jokes and witnessed O'Malley make sexually inappropriate comments to employees and about female Yacht Club members.  (*Id*., ¶¶ 39–41, PageID #8.)

3

During the period of alleged harassment between August or September 2021 and May 2022, Ms. Mesko verbally complained to management regarding Almeda's and Rancifer's harassment.  (*Id.*, ¶¶ 37 & 47, PageID #7 & #10.)  As did Ms. Quinones, Ms. Mesko complained to kitchen manager Cortes, head chef Rodriguez, general manager Wolfe, and general manager O'Malley.  (*Id.*)  Also, she complained to bar manager, Shioban Hobson.  (*Id.*, ¶ 47, PageID #10.)  In May 2022, Ms. Mesko was terminated.  (*Id.*, ¶ 48, PageID #10.)  Edgewater Yacht Club told Ms. Mesko that the reason for her termination was charging the service fee for to-go orders.  (*Id.*)  However, because she charged orders that way throughout her nearly year-long employment without discipline from management, Ms. Mesko alleges that this explanation was pretextual and that she was fired for complaining about sexual harassment.  (*Id.*)

## STATEMENT OF THE CASE

Plaintiffs sued Edgewater Yacht Club, Inc. for sexually hostile work environment and retaliation under both federal and State law.  (ECF No.1.)  After beginning discovery, the parties mediated but were unable to reach a resolution.  (ECF No. 12.)  Then, Defendant filed a combined motion to separate trials and motion to exclude testimony of non-party witness Angelina Medina.  (ECF No. 14.)  Plaintiffs filed a combined opposition to the motions.  (ECF No. 16.)

## ANALYSIS

"Although not explicitly authorized by the Federal Rules of Evidence or the Federal Rules of [Civil] Procedure, the practice of ruling on motions in limine 'has

developed pursuant to the district court's inherent authority to manage the course of trials.'" *United States v. Mack*, 298 F.R.D. 349, 350–51 (N.D. Ohio 2014) (quoting *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). Ruling on motions *in limine* allows both the court and counsel to avoid delay and "focus remaining preparation time on issues that will be in fact considered by the jury." *Id.* (citations omitted). But "[c]ourts should exclude evidence on a motion in limine only when it is clearly inadmissible." *Id.* (citing *Indiana Ins. Co. v. General Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)). If evidence is not "clearly inadmissible," the court "should defer ruling until trial" when it will have "proper context" to evaluate the evidentiary objection. *Id.* (citation omitted). *In limine* rulings rest "within the sound discretion of the trial court" and are merely preliminary, meaning the court can "change its ruling at trial for any reason it deems appropriate." *Id.* (citing *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994)).

## I.  Separate Trials

Defendant moves for separate trials of Ms. Quinones' and Mr. Mentz' claims in one proceeding and Plaintiff Mesko's claims in another. (ECF No. 14.) Defendant argues that Ms. Quinones and Ms. Mesko experienced different actions from different coworkers and did not work in the same location and that Plaintiffs fail to allege that a member of management created the sexually hostile work environment. (*Id.*, PageID #203–04.) Defendant also argues that trying the claims together would result in bootstrapping Plaintiff Quinones' claims on Plaintiff Mesko's claims, and vice versa. (*Id.*)

Plaintiffs argue that Ms. Quinones' and Ms. Mesko's claims are similar such that judicial economy favors trying the claims together.  (ECF No. 16.)  Plaintiffs worked in food service at the same restaurant with the same staff and management. (*Id.*, PageID #579.)  Plaintiffs describe the work environment as "intermingled" with a non-bartender employee, Angelina Medina, complaining about harassment by a cook, Almeda, to a bar manager, Hobson.  (*Id.*)  Plaintiffs argue that they are not bootstrapping claims, but rather their direct experiences and observations make each Plaintiff a witness in the other's case and that other witnesses would need to testify in both trials.  (*Id.*, PageID #580.)  Accordingly, Plaintiffs argue that bifurcation would make this matter less convenient and less economical.  (*Id.*)

A court may order separate trials for convenience, to avoid prejudice, or to expedite and economize the proceedings.  Fed. R. Civ. P. 42(b).  Only one criterion must be met to separate.  *Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996).  The decision to order separate trials lies within the discretion of the district court and "is dependent on the facts and circumstances of each case."  *Id.*  "A district court needs to consider 'the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy.'"  *Huang v. Ohio State Univ.*, 116 F.4th 541, 563 (6th Cir. 2024) (quoting *Martin v. Heideman*, 106 F.3d 1308, 1311 (6th Cir. 1997)).

Title VII cases involving workplace harassment are highly fact dependent. Where claims "center on allegations of continuous sex discrimination involving the same *modus operandi*" and "are based on a similar series of transactions that were

6

committed by the same defendant over a relatively short time span," the "potential for jury confusion" is "outweighed by considerations of judicial economy" and the defendant "suffer[s] no real prejudice given the similarities between the cases involved." *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 774 (5th Cir. 2009) (denying bifurcation).    Discrimination cases are "generally appropriate for combined litigation." *Phillips v. Potter*, No. 1:05-cv-1852, 2008 WL 11492752, at *31 (N.D. Ohio Mar. 31, 2008) (denying a motion to sever because plaintiffs' claims of sexually hostile work environment possess sufficient commonality since plaintiffs worked at the same location in the same capacity with the same supervisors and because of judicial economy since plaintiffs will call many of the same witnesses).

Here, separate trials are not warranted.  Ms. Quinones and Ms. Mesko allege the same *modus operandi* of similar verbal and physical harassment from the same individual, Almeda, over a relatively short time span that included some two overlapping months.  Ms. Quinones claims that Almeda harassed her from April 2022 to June 2022 (*id.*, ¶¶ 16–18, PageID #4), and Ms. Mesko makes claims that Almeda engaged in similar conduct with her from June 2021 to May 2022.  (*Id.*, ¶ 34–35, PageID #7.)  While the wording of the sexual comments and the physical touching from Almeda might differ, both Plaintiffs allegedly experienced both verbal and physical harassment and unwanted touching.  (*Id.*, ¶¶ 16–18 & 25, PageID #4 & #7.)  While Ms. Mesko also alleges verbal and physical harassment by Rancifer, the two allegations of the two women center on Almeda.  Additionally, Ms. Quinones and Ms. Mesko reported the harassment to mostly the same management personnel,

7

specifically Cortes, Rodriguez, O'Malley, and Wolfe.  (*Id.*, ¶¶ 21–24, 26, 37 & 47, PageID #4–5, #7 & #10.)  Ms. Quinones also complained to board chairman Duane Wolff, (*Id.*, ¶ 26, PageID #5), and Ms. Mesko complained to bar manager Siobhan Hobson.  (*Id.*, ¶ 47, PageID #10.)  The fact that Ms. Quinones and Ms. Mesko each complained to one different member of management does not outweigh the common fact that they complained to four of the same members of management.

Because Plaintiffs' Title VII claims involve the same *modus operandi* of alleged verbal and physical harassment and are based on a similar series of transactions by the same harasser over a relatively short time span, the claims substantially overlap in evidence and witnesses.  Separate trials would require many of the same witnesses to testify twice.  Trying the cases together promotes judicial economy and convenience for the witnesses.  On these facts and circumstances, the Court will exercise its discretion to try the cases together with proper evidentiary safeguards and appropriate jury instructions.  Therefore, The Court **DENIES** the motion for separate trials.

## II.    Motion to Exclude the Testimony of Non-Party Witness

Defendant moves to exclude testimony of non-party witness Angelina Medina and, if her testimony is permitted, seeks to question Ms. Medina about her settlement agreement.

### II.A.  Admissibility of Testimony

Defendant argues that Medina's testimony should be excluded under Rule 403(b) because it has no probative value and would substantially prejudice Defendant.  (ECF No. 14, PageID #200.)  Because Medina was sixteen and her

"alleged harasser was significantly older," "[t]here is an 'ick' factor here that Plaintiffs will wish to play up to create prejudice against Defendant. (*Id.*)  Defendant also argues that Rule 404(b) prohibits the introduction of evidence of other crimes, wrongs, or acts to show conformity to character on a particular occasion, so Plaintiffs cannot use evidence of what happened to Medina as character evidence that the same harassment happened to Plaintiffs. (*Id.*, PageID #198.)  Defendant points out that Medina's EEOC charge involved harassment that occurred after Plaintiffs were no longer employed at Edgewater Yacht Club. (*Id.*)

Plaintiffs argue that all of Medina's testimony is relevant and admissible. (ECF No. 16, PageID #575.)  Defendant's argument to exclude all of her testimony relies on the timing of the harassment underlying her EEOC charge. (*Id.*)  However, Plaintiffs clarify that Medina's experience of sexual harassment is not limited to the incident with York that formed the basis of her EEOC charge. (*Id.*)  Plaintiffs allege that Almeda also harassed Medina, who witnessed his harassment of Ms. Quinones and Ms. Mesko, Rancifer's harassment of Ms. Mesko, and coworkers warn others about harassment.  Based on her experiences and observations, Plaintiffs argue that Medina can speak to whether there was a culture of workplace harassment. (ECF No. 15-1, PageID #337 & #368–72.)

Evidence is relevant if it has "any tendency" to make a "fact of consequence" to the case "more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  To be relevant, the evidence need only "'advance the ball' by showing that it is more (or less) likely that the plaintiff's theory of the defendant's liability is

9

true." *Huang*, 116 F.4th at 564 (quoting *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009)).  "Orders *in limine* which exclude broad categories of evidence should rarely be employed." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).  "A better practice is to deal with questions of admissibility of evidence as they arise." *Id.*

In the Title VII context, "'other acts' evidence consists of testimony or other evidence of discrimination by the employer against non-party employees." *Griffin v. Finkbeiner*, 689 F.3d 584, 598 (6th Cir. 2012).  Whether "other acts" evidence is "relevant is a case-by-case determination that 'depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case.'" *Id.* (quoting *Sprint/United Mgmt. Co.* v. Mendelsohn, 552 U.S. 388, 388 (2008)).  "[S]imilar acts of harassment of which a plaintiff is aware during her employment can be introduced as evidence of a hostile work environment," "even if the harassing acts were directed at others or occurred outside of the plaintiff's presence." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 336–37 (6th Cir. 2008).

Medina is a third-party witness to Plaintiffs' claims.  She was hired in June 2021 as a hostess, food runner, and cleaner at Edgewater Yacht Club.  (ECF No. 15-5, PageID #558.)  At the time of her employment, she was sixteen years old.  (ECF No. 16, PageID #571.)  Her employment overlapped with Ms. Mesko's from June 2021 to May 2022 (ECF No. 15-1, PageID #327) and eith Ms. Quinones' from at least April 2022 to June 2022 (ECF No. 1, PageID #3 & 7).

10

During the time that Ms. Quinones and Ms. Mesko were employed by Edgewater Yacht Club, Medina was also allegedly harassed by Almeda. (ECF No. 15-1, PageID #362.) Ms. Quinones warned Medina about Almeda's inappropriate comments. (*Id.*, PageID #362 & #363.) Ms. Quinones then reported these comments about Medina to Ray Rodriguez. (ECF No. 16, PageID #570.)

During her overlapping periods of employment with Ms. Quinones and Ms. Mesko, Medina allegedly observed harassment of coworkers, including Almeda's and Rancifer's comments to Ms. Quinones and Ms. Mesko. (ECF No. 15-1, PageID #337, #362, #365–66 & #368–72; ECF No. 16, PageID #567.) In December 2022, after Ms. Quinones and Ms. Mesko were no longer employed by Edgewater Yacht Club, Medina was allegedly harassed by Gerald York—who does not figure in the events involving Ms. Quinones or Ms. Mesko. (ECF No. 15-5, PageID #558.) In December 2022, Medina filed an EEOC charge about Yorks's harassment of her. (ECF No. 15-5.) Medina settled this with Edgewater Yacht Club. (ECF No. 15-1, PageID #318–19.) As of August 29, 2022, Medina was no longer employed by Edgewater Yacht Club. (*Id.*, PageID #327.)

The Court finds that some of Medina's testimony is relevant and admissible. The Court will impose evidentiary safeguards by limiting Medina's testimony to events through June 18, 2022—Mr. Mentz' last day of employment, which is the latest date of employment of any Plaintiff. Events involving Medina that occurred after June 18, 2022 have no tendency to make any fact of consequence related to Plaintiffs' claims more or less probable. Therefore, the Court will only permit a limited question

11

or two so that the jury knows that Medina stopped working at Edgewater Yacht Club but not that she filed a claim or otherwise complained of harassment after that date.

### II.B.  Admissibility of Medina's Settlement

If Medina testifies, Defendant seeks to "explore all circumstances of her claim," including the amount for which she agreed to settle.  (ECF No. 14, PageID #201.) Defendant argues that it "should be able to use the amount of Ms. Medina's settlement as a benchmark for the jury to consider when assessing the damages it might award."  (*Id.*)  Plaintiffs argue that allowing such evidence would violate the plain language of Rule 408.  (ECF No. 16, PageID #579.)

For two reasons, the Court will exclude such testimony from Medina.  First, as already discussed, the harassment of Medina that occurred after June 18, 2022, Plaintiffs' latest date of employment with Edgewater Yacht Club, have little if any relevance.  Therefore, the fact that she filed a charge with the EEOC and settled it opens the door to a trial within a trial.

Additionally, evidence of settlement offers, negotiations, or agreements is "not admissible—on behalf of either party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid. 408.  While Rule 408 "is ordinarily phrased in terms of offers of compromise, it is apparent that a similar attitude must be taken with respect to completed compromises when offered against a party thereto," which "will not, of course, ordinarily occur except when a party to the present litigation has compromised with a third person."  Fed. R. Evid. 408 advisory committee notes.

Accordingly, Rule 408 bars the line of questioning Defendant proposes to pursue.  Medina's settlement with Edgewater Yacht Club falls squarely within the type of evidence to which the Rule applies.  Conceivably, Defendant might offer this evidence for some purpose that Rule 408 might not cover.  In that case, consistent with the standard for motions *in limine*, the Court will revisit the issue at trial.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion for separate trials and, subject to the Court's limitations, **DENIES** the motion to exclude the testimony of Angelina Medina.

**SO ORDERED.**

Dated:  November 19, 2025

_____

   J. Philip Calabrese
   United States District Judge
   Northern District of Ohio